UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. : 0:11-CV-62570-KMW

MILLENIUM INDUSTRIES NETWORK
INC., a Delaware corporation,

    Plaintiff,

vs.

EDWIN E. HITTI, et al.,

    Defendants.
_____/

**PLAINTIFF'S OPPOSITION TO DEFENDANT ASAP TRANTACTIONS PROCESSING CORPORATION'S MOTION TO DISMISS THIRD AMENDED COMPLAINT [DE 194]**

    Plaintiff submits its opposition to the motion [DE 195] by Defendant ASAP Transactions Processing Corporation, Ltd. ("ASAP"), to dismiss Counts 2-7 of the Third Amended Complaint (the "TAC") [DE 194].

## Introduction

    In this action, ASAP is alleged to have solicited the business of a Florida company, Plaintiff and, after procuring same, converting $2,874,734.22 of Plaintiff's money. Indeed, as alleged in the TAC, as recently as September 2012, a key defendant indicated that ASAP currently possesses Plaintiff's funds subject of this suit.

    As its response to the TAC, ASAP has brought a motion to dismiss under Rules 8(a), 12(b)(2) and 12(b)(6), challenging the adequacy of the allegations and this Court's jurisdiction. As shall be more fully discussed below, this Court has personal jurisdiction over ASAP under Florida Statutes § 48.193(1)(b) as a result of ASAP's commission of in-state tortuous acts. Further, each claim has been properly alleged against ASAP in accordance with the standards set forth by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009). In sum, none of ASAP's challenges are valid and the Motion to Dismiss (the "Motion") should be denied in full.

1

## I. THIS COURT HAS JURISDICTION OVER THE DEFENDANT

### A. ASAP's Activities Meet the Requirements of Florida's Long Arm Statute

In order to properly evaluate the jurisdictional aspects of this case, it is imperative that the respective roles of the parties, including ASAP, be properly explained in the credit card processing hierarchy.

In a payment processing hierarchy there are multiple players, each of which serves a function in the multi-layered payment processing mechanism. At the lowest level is the merchant who sells products or services to the ultimate customers. The merchant in this instance is Plaintiff. TAC, ¶¶ 11-12.

Next, is the payment gateway and processor. A payment gateway is an e-commerce application service provider service that authorizes payments for e-businesses, online retailers, bricks and clicks, or traditional brick and mortar. It is the equivalent of a physical point of sale terminal located in most retail outlets. Payment gateways protect credit card details by encrypting sensitive information, such as credit card numbers, to ensure that information is passed securely between the customer and the merchant and also between merchant and the payment processor. Here, the payments put forward for processing by Plaintiff went through the gateway ASAP. TAC, ¶¶ 13-16.

Above the processors are the acquiring banks. The banks - here BEA and Fubon - undertake to pay the merchant the amount of a given purchase transaction (less applicable fees and charges) in the expectation of receiving payment in turn from the bank that issued the credit card originally to the customer in question (the "issuing bank") in accordance with applicable Association Rules. For its participation in such transactions, BEA and Fubon receive fees in accordance with an agreed upon formula, which in certain cases may include penalties against the merchant if its accounts or transactions fail to meet certain prescribed limitations or conditions. TAC, ¶¶ 12-15.

As alleged in the TAC, Plaintiff is a company that sells various products online and was required and employed credit card processing services for the consummation of web-based payment transactions. In order to process online payments, an internet business such as Plaintiff is required to maintain an account with a banking institution that accepts payments by Visa and MasterCard (the "Associations"). The banks contract directly with the Associations, which

2

**PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, P.L.**
200 South Andrews Avenue, Suite 600, Fort Lauderdale, Florida 33301 • (954) 566-7117
1000 Brickell Avenue, Suite 600, Miami, Florida 33131 • (305) 377-0086

permit them to process payments made using the Associations' bankcards, provided that the banks abide by the Associations' regulatory framework. In this hierarchy, the Associations' rules are referred to as the "Association Rules". TAC, ¶¶ 11-15.

Sometime in August 2010, Plaintiff's representative Issa Asad ("Asad") was approached by certain sales agents in Miami, Florida which included Edwin Hitti ("E. Hitti"). E. Hitti explained that he as well as Voltage Pay had a relationship with banks in Hong Kong which would be able to process Plaintiff's payment transactions. TAC, ¶¶ 17, 20-22. When Plaintiff initially sought a payment processing solution, during a Florida meeting, it retained Kevin Lewis ("Lewis") of Voltage Pay.

Lewis proceeded to conduct due diligence on Plaintiff and, having satisfied himself, introduced Plaintiff to R. Hitti and E. Hitti, who represented that they would be able to secure a processing relationship for Plaintiff.

Lewis, E. Hitti and R. Hitti introduced Plaintiff's Asad to a processor called Croem, which is based in Miami, Florida. Asad Decl. 5-6 and Lewis Decl. 7-8. Through a series of discussions that spanned weeks, Lewis [Voltage Pay], R. Hitti and E. Hitti, Rosa Arsenio [Croem], and Ajmal Samuel [ASAP] and Hans Wong [ASAP] determined that due to technical problems it encountered in its dealings with Croem, Plaintiff would be better served by working directly with ASAP.

Throughout these exchanges, both Wong and Samuel, knew that: (1) Croem was in Florida; (2) Plaintiff and its representatives were physically located in Florida; (2) Plaintiff was communicating with Wong and Samuel out of Florida; (3) ASAP was soliciting the business of a Florida company in collaboration with a Florida entity [Croem]; and (4) that any failure on its part to properly effectuate the services it was performing would cause harm to Plaintiff, which is situated in Florida.

Through a series of emails, the parties coordinate the relationship and proceeded with the processing activity. To dispel any conceivable questions as to whether ASAP's representatives, Samuel and Wong were aware that they were dealing with a Florida-based entity, an e-mail dated November 10, 2010, the footer containing contact information for Asad prominently states:

> Miami Florida
> Work: 954.482.4255

3

      Fax: 305.402.0224

      Cell: 305.915.9600

Asad Decl. 8, Exh. C. and Lewis Decl. 10, Exh. C.

      The "305" and "954" area codes are for the State of Florida. Critically, in addition to the extensive e-mail communications with Asad in Florida which ultimately led to Plaintiff selecting ASAP as the payment gateway for its transactions, both Wong and Samuel participated in [daily] telephone calls phone calls with Plaintiff. All of these calls were placed by ASAP's representatives to a Florida company with the intention of securing its business. Further, these calls were made with specific knowledge by Ajmal and Wong that Plaintiff was in Florida.

      Ultimately, ASAP secured Plaintiff's business and Plaintiff agreed to process its transactions with ASAP. This very processing relationship resulted in the damage subject of this action. Specifically, as alleged in the TAC, $2,874,734.22 of funds belonging to Plaintiff were converted.

      In a telephone conversation between Plaintiff's attorney, David P. Steiner and Bank of East Asia's ("BEA") representative, BEA confirmed that all funds remaining with the Bank were transferred to ASAP. Declaration of David P. Steiner ("Steiner Decl.") ¶ 3. Despite notification from Plaintiff's attorneys on multiple occasions, ASAP has stonewalled all efforts to respond to Plaintiff and has obstinately refused to transfer the funds subject of the suit.

      **1.**    ***The Court should assert jurisdiction over ASAP as it has committed a tortious act within the state.***

      Florida Statutes § 48.193(1) sets forth eight separate bases for specific jurisdiction:

> (a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
>
> (b) Committing a tortious act within this state.

§ 48.193(1).

      Subdivision (b) of § 48.193(1) provides that jurisdiction may be asserted where the foreign defendant has "[c]ommitt[ed] a tortious act within this state." Here, ASAP has converted funds belonging to Plaintiff by soliciting it to process said funds and ultimately converting same. Here, Plaintiff alleges that ASAP, along with other defendants, committed the tort of conversion. The **pleading** of each of these torts satisfies the requirements of § 48.193(1)(b) and confers

4

personal jurisdiction over ASAP. *Tara Prods., Inc. v. Hollywood Gadgets, Inc.,* 2010 WL 1531489, \* 13 (S.D.Fla. Apr.16, 2010) (Cohn, J.) (fraud and civil conspiracy); *Future Technology Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1250 (11th Cir. 2000) (conversion).

Notwithstanding the clear allegations of the TAC that, ASAP received moneys belonging to Plaintiff, that Plaintiff demanded the return of the funds, that Defendants refused to pay it over and that all defendants, including ASAP exercised control and dominion over these funds amounting to $2,874,734.22, [*See* TAC, ¶¶ 59-64], ASAP challenges same and contends that "no allegation in the TAC even arguably suggests ASAP TP committed any tort." Motion, p. 7, ¶ 2.

Arguing further, that even if such an allegation was made – which it was [TAC, ¶¶ 59-64] – the affidavit of Mr. Samuel appears to refute the connection between Plaintiff on the one hand and ASAP and the balance of the defendants on the other hand. Motion, p. 7, ¶ 2. In fact, Mr. Samuel's limited declaration does no such thing and deliberately avoids mentioning the most important question in this litigation: Does ASAP have possession of the $2,874,734.22 belonging to Plaintiff or any portion thereof?

In his declaration, Mr. Samuel contends that ASAP never entered into any contractual relations with Plaintiff. Samuel Decl. ¶ 14. The proffered absence of a contractual relationship is irrelevant to a consideration of whether a tort has been alleged. The tort of conversion is defined as, "an act of dominion wrongfully asserted over another's property inconsistent with his ownership therein. In essence, conversion is an unauthorized act which deprives another of his property permanently or for an indefinite time." *Special Purpose Accounts Receivable Co-op Corp. v. Prime One Capital Co.,* 125 F.Supp.2d 1093, 1099-1100 (S.D.Fla.2000) (quoting *Burger King Corp. v. Austin,* 805 F.Supp. 1007, 1012 (S.D.Fla.1992)) (citations omitted). Florida courts have identified three elements necessary to state a claim for conversion: (1) an act of dominion wrongfully asserted; (2) over another's property; and (3) inconsistent with his ownership therein. *Id.* That is precisely the conduct alleged in Claim 4 of the TAC. Further, at Paragraph 38 of the TAC, it is specifically alleged that "as recently as September of 2012 a representative of BEA confirmed that the balance of Plaintiff's funds maintained with BEA were transferred to ASAP." The tort of conversion has been alleged against ASAP.

5

**PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, P.L.**
200 South Andrews Avenue, Suite 600, Fort Lauderdale, Florida 33301 • (954) 566-7117
1000 Brickell Avenue, Suite 600, Miami, Florida 33131 • (305) 377-0086

Moreover, ASAP's own papers affirm the appropriate legal standard for evaluation of its conduct: "[a]lthough physical presence in the state is not required, the act must otherwise occur by 'making telephonic, electronic, or written communications into [Florida], provided that the tort alleged arises from such communications." Motion, p. 6, ¶ 2 (citing *Koch v. Royal Wine Merch., Ltd.,* 847 F. Supp. 2d 1370, 1379 (S. D. Fla. 2012). Again, the emails exchanged between Plaintiff and ASAP's representatives established a payment processing relationship which ASAP used to its advantage in converting funds from Plaintiff's processing activity. As earlier explained, Plaintiff is located in the State of Florida, Southern District.[1]

In sum, the conversion of Plaintiff's funds by, among others, ASAP pursuant to its solicitation and ultimate procurement of Plaintiff's business in the State of Florida is the "tortious act," subject of § 48.193(1).

For Count 6, Plaintiff has asserted a violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). FDUTPA was "designed to protect not only the right of litigants, but also the rights of the consuming public at large." *Davis v. Powertel, Inc.,* 776 So.2d 971, 975 (Fla. 1st DCA 2000). Accordingly, Florida courts have described FDUTPA as a "statutory tort," *Am. Boxing & Athletic Ass'n,* 911 So.2d 862, 864–65 (Fla. 2d DCA 2005), and noted that it "constitutes a somewhat unique tortious act because, although it is somewhat similar to a claim in fraud, it is different in that, unlike fraud, a party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue." *State, Office of Atty.*

---

[1] The Florida Supreme Court has asserted personal jurisdiction in several specific factual scenarios where the tortious act took place outside of Florida, but the injury occurred to an in-state resident. *See Wendt v. Horowitz,* 822 So.2d 1252, 1253 (Fla.2002) (holding that telephonic, electronic, or written communication into Florida from outside of Florida may constitute "committing a tortious act" under section 48.193(1)(b) if the alleged cause of action arises from the communications); *see also Acquadro, M.D. v. Bergeron,* 851 So.2d 665, 671 (Fla.2003) (applying *Wendt* and finding that a tortious act can arise from an individual's telephonic communication to form the basis for personal jurisdiction and stating that section 48.193 does not distinguish among the universe of possible torts); *Posner v. Essex Ins. Co. v.* 178 F.3d 1209, 1217 (11th Cir.1999); *see also Robinson v. Giarmarco & Bill, P.C.,* 74 F.3d 253, 257 n. 2 (11th Cir.1996) (acknowledging that Florida courts have a stronger tendency to apply a broad interpretation of (1)(b) to intentional torts as opposed to negligence claims). The Florida Supreme Court has also clearly stated that the defendant's presence in Florida is not required under section 48.193(b). *See Wendt,* 822 So.2d at 1260 (explicitly stating that a defendant's physical presence is not required to 'commit a tortious act' in Florida).

*Gen., Dept. of Legal Affairs v. Wyndham Int'l, Inc.,* 869 So.2d 592, 598 (Fla. 1st DCA 2004). Thus, personal jurisdiction with respect to a FDUTPA claim may be attained over non-Florida parties pursuant to Florida's long-arm statute, § 48.193(1)(b). *Id.* at 599. Therefore, this claim provides an additional basis for the assertion of jurisdiction over ASAP by this Court.

In sum, Plaintiff has certainly established a **prima facie** case that ASAP's conduct meets Florida's long-arm statute. The Court must now consider the due process considerations.

### B. The Exercise of Personal Jurisdiction in This Case Will Not Offend Traditional Notions of Fair Play and Substantial Justice

Having established that ASAP's conduct meets the requirements for personal jurisdiction under Section (b) of § 48.193(1), the Court must determine whether "minimum contacts" exist to satisfy the Due Process Clause of the Fourteenth Amendment such that "maintenance of the suit does not 'offend traditional notions of fair play and substantial justice' "as set forth in *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). *Id.* (citations omitted). This requirement is satisfied if the defendant "purposefully directs activities at Florida and litigation arises out of those activities, or the defendant purposefully avails himself of the privilege of conducting activities within the forum state." *Achievers Unlimited, Inc. v. Nutri Herb. Inc.,* 710 So.2d 716, 719 (Fla. 4th Dist.Ct.App.1998) (construing *Burger King v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). In evaluating whether due process is met in subjecting a foreign defendant to the jurisdiction of the local courts, the Eleventh Circuit has noted that the burden on a litigant is only significant if it is "'gravely difficult and inconvenient' that he unfairly is at 'a severe disadvantage' in comparison to his opponent." *See Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 947-48 (11th Cir. 1997*Id.* at 948 (holding that the Southern District of Florida had jurisdiction over RICO claims against alien corporation and defendants where defendants presented no evidence that their defense would be significantly compromised if required to litigate in Miami) (citation omitted). Inconvenience alone is not enough to deny a court personal jurisdiction over the defendant. *Id.* (noting that only in "rare cases" will inconvenience become constitutionally unreasonable) (citing *Asahi Metal Industry Co. v. Superior Court,* 480 U.S. 102, 116 (1987).

The Eleventh Circuit has also noted that a defendant's burden is "counterweighed" by evidence of plaintiff's strong interest to litigate in the State and if the plaintiff have no other

PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, P.L.
200 South Andrews Avenue, Suite 600, Fort Lauderdale, Florida 33301 • (954) 566-7117
1000 Brickell Avenue, Suite 600, Miami, Florida 33131 • (305) 377-0086

means of obtaining relief. *See Carrillo,* 115 F.3d at 1548 (holding that Florida had an "'obvious interest in stamping out the type of nefarious economic chicanery alleged.'") (citing *Sculptchair, Inc. v. Century Arts*, 94 F.3d 623, 632 (11th Cir. 1996).

As set out in extensive detail in the declarations of both Lewis and Asad, ASAP purposefully and deliberately directed its activities towards Florida as, over the course of several months it set up the payment processing relationship and commenced its processing activity subject of that very relationship. Wong and Samuel courted Plaintiff, guided it in the proper integration mechanism, called and e-mailed its representatives in order to set up the processing and, finally, converted Plaintiff's money.

Next, ASAP has not demonstrated that the exercise of personal jurisdiction would be "so gravely difficult and inconvenient" as to defeat due process and no facts substantiating this have been adduced by ASAP. ASAP has secured capable counsel in the State of Florida and a many of the witnesses to this dispute, including Croem and Plaintiff's representatives are in the State of Florida, where they were initially solicited by ASAP.

In addition, both the State of Florida and Plaintiff have a significant interest in adjudicating these claims here. "A State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of state actors." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). In *Burger King* a Florida corporation sued its Michigan franchisee in the Federal District Court in Florida for breach of the franchise agreement. The franchisee appeared specially and claimed that because he was a Michigan resident doing business only in Michigan, and because the claim did not "arise" in Florida, the district court lacked jurisdiction over him. The Supreme Court disagreed. It held the franchisee, through his continuing contractual obligations to the Florida corporation, purposefully had availed himself of the privilege of conducting business in Florida. The high court declared that, although a non-resident defendant does not necessarily become subject to the specific jurisdiction of the forum state simply by entering into a contract with a resident of the forum, the exercise of specific jurisdiction over the out-of-state franchisee was appropriate in the case before it because of ongoing franchise relations very similar to those involved here. *Id.* 471 U.S. at 478.

8

**PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, P.L.**
200 South Andrews Avenue, Suite 600, Fort Lauderdale, Florida 33301 • (954) 566-7117
1000 Brickell Avenue, Suite 600, Miami, Florida 33131 • (305) 377-0086

As noted, the court declared that, "with respect to interstate contractual obligations, we have emphasized that parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." *Id.* at 473. The court observed that the dispute in question grew out of a contract that had a "substantial connection" with the forum state. *Id.* at 479. The court acknowledged that the franchisee was supervised directly by the Michigan Burger King office, but noted that, as in the present case, the franchisee made monthly payments to (and agreed that his operations would be regulated by) corporate headquarters in the forum state. It was key for the court that the Michigan franchisee, although he had no physical presence in Florida, had agreed to an ongoing contractual relationship under which it was established that any disputes would be governed by Florida law. *Id.* at 481.

It was significant that, the franchisee had reached out beyond Michigan and negotiated with a Florida corporation to take advantage of the significant benefits that would flow from affiliation with the Burger King name and organization. The court stated: "In light of [the franchisee's] voluntary acceptance of the long-term and exacting regulation of his business from Burger King's Miami headquarters, the 'quality and nature' of his relationship to the company in Florida can in no sense be viewed as 'random,' 'fortuitous,' or 'attenuated.'" *Id.* at 480.

A claim need not arise directly from the defendant's forum contacts in order to be sufficiently related to the contact to warrant the exercise of specific jurisdiction. Rather, as long as the claim bears a substantial connection to the non-resident's forum contacts, the exercise of specific jurisdiction is appropriate. The due process clause is concerned with protecting non-resident defendants from being brought unfairly into court in the forum, on the basis of random contacts. That constitutional provision does not provide defendants with a shield against jurisdiction when the defendant purposefully has availed himself of benefits in the forum.

Courts have routinely asserted jurisdiction over defendants who, as did ASAP here established ongoing business relationships with residents of foreign states.  See, e.g., *Amoco Cadiz,* 699 F.2d 909, 917 (Ill. Ct. App. 1983) (French victims of oil spill may bring a tort action against a Spanish shipbuilder in an Illinois court; their claim "could readily be said to arise from the negotiating and signing, in Illinois, of the [shipbuilding] contract" even though the negotiations obviously were not directed at the plaintiffs.); *Keeton v. Hustler Magazine, Inc.,* 465

9

PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, P.L.
200 South Andrews Avenue, Suite 600, Fort Lauderdale, Florida 33301 • (954) 566-7117
1000 Brickell Avenue, Suite 600, Miami, Florida 33131 • (305) 377-0086

U.S. 770, 775 (1984) (publisher that distributes magazines to the public in a distant state may be held accountable in that forum for damage to victim of defamation); *Cornelison v. Chaney* (1976) 16 Cal.3d 143 (jurisdiction found although the defendant's business activities in California were not directed at the accident victim); *Akro Corp. v. Luker,* 45 F.3d 1541, 1547 (Fed. Cir. 1995) ("plaintiff need not be the forum resident toward whom any, much less all, of the defendant's relevant activities were purposefully directed").

The United States Supreme Court has stated more than once that the nexus required to establish specific jurisdiction is between the defendant, *the forum,* and the litigation — not between the plaintiff and the defendant. *Helicopteros, supra,* 466 U.S. at p. 411.  For the purpose of deciding whether a defendant has minimum contacts or purposefully has availed itself of forum benefits, the relevant contacts are said to be with the *forum,* because it is the defendant's choice to take advantage of opportunities that exist in the forum that subjects it to jurisdiction. *Asahi Metal Industry Co. v. Superior Court* (1987) 480 U.S. 102, 112; *Burger King, supra*, 471 U.S. at 475; *Helicopteros, supra*, 466 U.S. at 414. Again, as demonstrated by the declarations of both Lewis and Asad, ASAP made an unequivocal choice to take advantage of the opportunities available to it in the State of Florida.  It cannot now complain that it is being sued in that State for torts committed in the course of its provision of services.

## II. LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY SHOULD BE GRANTED

Plaintiff has demonstrated that the Court has personal jurisdiction over ASAP and that the assertion of jurisdiction will not offend traditional notions of fair play and substantial justice. If the Court finds that Plaintiff has not met its burden, Plaintiff requests the Court to grant it leave to conduct jurisdictional discovery so that it may substantiate its claim that the assertion of jurisdiction over ASAP is proper.

As stated by the Court in *Eaton v. Dorchester Dev., Inc.,* 692 F.2d 727, 729–31 (11th Cir.1982), "[t]he decision to allow jurisdictional discovery is very much a product of the timing and nature of any jurisdictional discovery request." Here, the request for jurisdictional discovery as to ASAP is made at the earliest point available in this litigation: concurrently with the filing of the opposition to the motion to dismiss. No other defendant to this proceeding has made an appearance and no other discovery has taken place. Consequently, Plaintiff's request is timely.

PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, P.L.
200 South Andrews Avenue, Suite 600, Fort Lauderdale, Florida 33301 • (954) 566-7117
1000 Brickell Avenue, Suite 600, Miami, Florida 33131 • (305) 377-0086

*Pownall v. Cunard Line Limited Co.,* 2007 U.S. Dist. LEXIS 99382, 2007 WL 5080671 (S.D.Fla. August 3, 2007) is instructive. There, the court granted jurisdictional discovery with respect to the tour operator, Fun Water. Then, based on the discovered information, and relying on *Stubbs v. Wyndham Nassau Resort and Crystal Palace Casino*, 447 F.3d 1357, 1361 (11th Cir. 2006), the court found that even though Fun Water did not have a presence or an agent in Florida, general jurisdictional requirements were satisfied because Fun Water's "contacts with Florida are a large part of what enables [it] to sell its tour packages to cruise-ship passengers." The court noted that Fun Water has ongoing business relationships with the Florida-based cruise lines and generated significant income from the cruise lines. The court identified Fun Water's numerous contacts with Florida, specifically that the tour operator received wire transfers from Florida from cruise lines, engaged in telephone calls, e-mails, and correspondence with cruise lines that sail out of Florida, was a member of the Florida Caribbean Cruise Association (as mandated by the tour operator's insurance policy), and listed the cruise line as insureds on its policy, which was purchased from a Florida-based insurance company. Significantly, all of this information was procured following the court's authorization of jurisdictional discovery prior to its final determination of the jurisdiction issue.

Here, through its CEO, Samuel, ASAP contends that it has no actual physical presence in the State of Florida. Yet, Samuel wholly fails to explain the actual business activity conducted by ASAP in Florida and with Florida companies. Again, ASAP provides payment processing services to merchants such as Plaintiff. There are no facts in the Motion which set out the scope and volume of ASAP's processing relationships with Florida merchants or transactions processed for Florida consumers. "In order to constitute doing business under [§ 48.193(1)(a)], the nonresident defendant's activities must be considered collectively and show a general course of business activity in the state for pecuniary benefits." *Foster, Pepper & Riviera v. Hansard*, 611 So.2d 581, 582 (Fla. 1st DCA 1992) (citing *Dinsmore v. Martin Blumenthal Assocs., Inc.*, 314 So.2d 561, 564 (Fla. 1975)). Here, Plaintiff has no facts to make the subject showing and the only means through which this information may be determined is jurisdictional discovery as to the nature and scope of ASAP's actual business relationship with Florida merchants and consumers. Further, Plaintiff seeks leave to determine how many cardholders residing in Florida are serviced by ASAP's merchants, whether Florida-based on not.

11

PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, P.L.
200 South Andrews Avenue, Suite 600, Fort Lauderdale, Florida 33301 • (954) 566-7117
1000 Brickell Avenue, Suite 600, Miami, Florida 33131 • (305) 377-0086

### III. PLAINTIFF HAS MET ITS BURDEN UNDER RULE 8

Under FRCP 8(a)(2), a pleading must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (citations omitted). In *Twombly*, the Supreme Court explained that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

The Eleventh Circuit, in addressing the pleading standard under *Twombly*, has stated that "[t]his rule does not 'impose a probability requirement at the pleading stage.'" *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008) (citations omitted); *see also F.T.C. v. 1st Guar. Mortg. Corp.*, No. 09-61840-CIV-SEITZ, 2011 WL 1226213, at *2 (S.D. Fla. Mar. 30, 2011) ("Dismissal is only appropriate where the plaintiff's factual allegations do not 'raise a right to relief above a speculative level.'"). Instead, the "standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Id*. at 1309-10 (citations omitted). "It is sufficient if the complaint succeeds in 'identifying facts that are suggestive enough to render [the element] plausible.'" *Id*. at 1310 (citations omitted). When considering a motion to dismiss for failure to state a claim, the "allegations in the complaint are taken as true and construed in the light most favorable to the plaintiffs." *Id.* at 1309; *see also In re Chiquita Brands Int'l, Inc., Alien Tort Statute & S'holder Deriv. Litig,* -- F. Supp. 2d --, No. 10-80652-CIV-MARRA, 2011 WL 2163973, at *6 (S.D. Fla. June 3, 2011) (holding that when construed in the light most favorable to the plaintiffs, plaintiffs had sufficiently stated claim under ATS and TVPA).

Plaintiff has clearly met this standard. At Paragraph 16 of the TAC, it alleges that ASAP served as a payment gateway and processor for payment transactions initiated by Plaintiff. It further alleged that payments processed by WWMG went through the gateway ASAP. TAC ¶ 16. Further, at Paragraphs 38 and 39, Plaintiff alleges:

> Rule 7.3.11 mandates that the only institutions in the processing hierarchy who have possession of merchant funds must be the banks, which are accredited by the Associations. Instead, here,

12

> Millenium is informed and believes and based thereon alleges that BOA and Fubon delegated the duty to ensure that credits and chargebacks were properly assessed on Millenium's accounts to the Hitti Defendants and to ASAP. **Indeed, as recently as September of 2012 a representative of BEA confirmed that the balance of Millenium's funds maintained with BEA were transferred to ASAP.** This is a direct breach of the Association Rules.
>
> These failures by the Defendants to abide by the Association Rules as well as their deliberate wrongful acts resulted in a conversion of no less than $2,874,734.22 of Millenium's funds.

TAC, ¶¶ 38-39 (emphasis added).

In sum, Plaintiff has clearly alleged that funds belonging to it are in possession of ASAP and has adduced evidence of a separate confirmation by one of the defendants – Bank of East Asia – of this contention. Plaintiff has alleged that all funds, including the Merchant Reserves should have been maintained by the banks, BEA and Fubon, and turned over to Plaintiff upon the expiration of the risk period. See TAC, ¶¶ 37-38. At Paragraph 38, Plaintiff has alleged that these funds were wrongfully transferred to ASAP. At Paragraph 39, Plaintiff alleges that the amount of $2,874,734.22 which includes the Merchant Reserves is withheld from them by the Defendants. These allegations plainly state the basis for liability against ASAP. That is all that is needed to place ASAP on notice for the basis of the subject suit against it under Rule 8.

## IV.   PLAINTIFF HAS ADEQUATELY STATED EACH CLAIM AGAINST ASAP

### A.   Plaintiff Has Properly Alleged Count 2 Against ASAP

As stated in the Motion, a cause of action for money had and received "This cause of action 'constitutes a remedy at law to recover money erroneously paid or received by a defendant when to permit the defendant to keep the money would unjustly deprive the plaintiff of his ownership of the money.'" *Battle v. Wachovia Bank, N.A.*, 2011 U.S. Dist. LEXIS 28825, at *9, 2011 WL 1085579 (S.D. Fla. 2011) (*citing Sharp v. Bowling*, 511 So. 2d 363, 364-65 (Fla. Dist. Ct. App. 1987). Plaintiff has alleged that "as recently as September of 2012 a representative of BEA confirmed that the balance of Millenium's funds maintained with BEA were transferred to ASAP." TAC ¶ 38. Plaintiff further alleges that Defendants' wrongful acts "resulted in a conversion of no less than $2,874,734.22 of Millenium's funds." TAC ¶ 39. At ¶¶ 25-27 Plaintiff

13

recounts its efforts to notify Defendants, including ASAP, that they are in possession of funds belonging to Plaintiff. ASAP has no right to possess Plaintiff's money and it would be unjust for it to retain same. That is all that is required to state a claim for money had and received.

### B.  Plaintiff Has Properly Alleged a Claim for Accounting

In support of its singular challenge to the accounting claim, ASAP cites *to Zaki Kulaibee Establishment v. McFlicker*. However, the cited language applies to the standard on summary judgment and not on the pleading requirement.

ASAP cites from the case: "[t]o successfully plead a claim for equitable accounting under Florida law, a plaintiff must allege that (1) a fiduciary relationship or complex transaction exists, and (2) a remedy at law would be inadequate.' *Zaki Kulaibee Establishment v. McFlicker*, 788 F. Supp. 2d 1363, 1370 (S.D. Fla. 2011)." However, the *Zaki* decision deals with the standard on summary judgment where the plaintiff failed to prove the existence of facts giving rise to the equitable remedy. The case actually provides as follows: "[u]nder Florida law, a party that seeks an equitable accounting must show that: (i) a fiduciary relationship exists between the parties or the transaction at issue is complex; and (ii) the remedy at law is inadequate." *Id.* The case states nothing about pleading the claim. Indeed, as demonstrated by the declarations of Asad and Lewis, this is a complex business relationship and an accounting may be warranted depending on the fact of this dispute as they are developed in the course of discovery. Plaintiff adequately pled the claim.

### C.  Plaintiff Has Properly Alleged a Claim for Conversion

Plaintiff has specifically identified the amount of money that was converted throughout the TAC. In addition, Plaintiff has alleged that the specific amount of money was held and should have been held in accordance with Association Rules by BEA and Fubon in accounts as Merchant Reserves for Plaintiff. See TAC ¶¶ 22 and 37-39. As such, BEA and Fubon were required by the Association Rules to keep the money intact and to deliver the specific money in question to Plaintiff. *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1056 (Fla. 3d DCA 2008).

As alleged in the TAC, BEA and Fubon transferred Plaintiff's funds to ASAP. See TAC ¶¶ 37-39. Through the Steiner Declaration, Plaintiff alleges that ASAP received $1,348,561.61 of Plaintiff's property from BEA alone. See Steiner Decl. at ¶ 5. Plaintiff also alleges through the Lewis and Asad Declarations that ASAP communicated directly with Plaintiff about processing

14

**PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, P.L.**
200 South Andrews Avenue, Suite 600, Fort Lauderdale, Florida 33301 • (954) 566-7117
1000 Brickell Avenue, Suite 600, Miami, Florida 33131 • (305) 377-0086

and even provided special sales reports to track Plaintiff's funds. See Lewis Decl. at ¶ 11 and Asad Decl. at ¶ 9. Plaintiff has properly alleged that ASAP received specific funds from BEA and Fubon which ASAP knew to be Plaintiff's funds and reported such to Plaintiff. Plaintiff properly pleaded a claim for conversion against ASAP.

### D. **Plaintiff has Properly Alleged a Claim for Unjust Enrichment**

The TAC is based upon Plaintiff's property (i.e., the $2,884,734.22) being transferred from the Defendant banks (i.e., BEA and Fubon) to ASAP and then the Hittis. BEA and Fubon were supposed to maintain Plaintiff's funds and not transfer them to ASAP or the Hittis. See TAC at ¶¶ 37-39. ASAP's basis for moving to dismiss Count 5 is that the benefit was conveyed by BEA to ASAP and not Plaintiff to ASAP. This basis is flawed as BEA did not transfer its own property to ASAP; rather, it transferred Plaintiff's property to ASAP. As BEA transferred Plaintiff's money to ASAP, Plaintiff and not BEA conveyed the subject benefit.

Plaintiff properly pleaded all three elements for a claim for unjust enrichment.

### E. **Plaintiff Has Alleged a Violation of the FDUTPA**

ASAP's challenge to Plaintiff's FDUTPA claim is two-fold: (1) the argument that the $2,874,734.22 alleged to have been stolen by Defendants constitutes "consequential damages" and not the "actual damages" required by the statute; and (2) that Plaintiff has failed to allege direct involvement by ASAP in the dealings that give rise to the FDUPTA claim. Both challenges are incorrect.

As alleged in the TAC, the $2,874,734.22 does not consist of any expected future profits or lost revenues but, rather, consists of the actual amount of money which Plaintiff contends has been converted by ASAP in the form of processing fees in the course of the processing relationship between the parties. See, e.g. TAC ¶¶ 1 and 24. Here, Plaintiff was to receive $2,874,734.22 – the market value of the services – and instead received $0. The difference between the services provided and that received is the actual damage amount pleaded in the TAC (i.e., $2,874,734.22).

ASAP's argument that Plaintiff failed to allege direct involvement is belied by the TAC itself as Plaintiff alleged throughout that it worked directly with ASAP as its gateway for processing Plaintiff's transactions. See TAC ¶¶ 13, 16, 18, 19, 22, 38 and 44.

### E. **Plaintiff Has Alleged a Claim for Civil Theft**

15

**PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, P.L.**
200 South Andrews Avenue, Suite 600, Fort Lauderdale, Florida 33301 • (954) 566-7117
1000 Brickell Avenue, Suite 600, Miami, Florida 33131 • (305) 377-0086

In order to arrive at its conclusion that Plaintiff has not "alleged" a claim for civil theft, ASAP relies on case law that applies to a claimant's necessary proof to prevail on a claim for civil theft and not on its pleading requirements. Thus, in support of its proposition that "[a] plaintiff must allege the statutory elements of theft, as well as the requisite criminal intent," ASAP cites to *Florida Desk, Inc. v. Mitchell Int'l Inc.,* 817 So. 2d 1059, 1060 (Fla. 5th DCA 2002), which is an appeal arising out of a judgment of the lower court that Mitchell International committed an act of civil theft of monies belonging to Florida Desk. In examining the standard of proof required for a plaintiff to prevail on the claim, the appellate court noted that "In order to establish an action for civil theft, the claimant must **prove** the statutory elements of theft, as well as criminal intent. *Id.* (citing *Gersh v. Cofman,* 769 So.2d 407 (Fla. 4th DCA 2000), *review denied,* 791 So.2d 1097 (Fla.2001)). Similarly, the other case cited by ASAP (*United Technology Corp. v. Mazer,* 556 F.3d 1260, 1270 (11th Cir. 2009)) deals with the burden of proof and **not** the standards of pleading.

It stands to reason that no such allegation is required at the pleading stage because the only manner in which a defendant's state of mind may be established is through discovery. Consequently, the courts impose no affirmative requirement that a plaintiff plead criminal intent by a defendant accused of civil theft as any such pleading would necessarily be speculative. As no such requirement exists, Plaintiff has adequately alleged the civil theft claim.

### F. Leave to Amend Should Be Granted

For all the reasons detailed above, Plaintiff has adequately alleged each count against ASAP. However, should the Court reach a contrary finding, Plaintiff respectfully requests leave to amend its claims.

### VI. CONCLUSION

For all the foregoing reasons, the Motion should be denied.

Dated:  April 23, 2013.                                      Respectfully submitted,


                                                             */s/ Paul D. Turner*
                                                             Paul D. Turner (0113743)
                                                             pturner@pbyalaw.com
                                                             Joshua B. Spector (0584142)
                                                             jspector@pbyalaw.com

16

PERLMAN, BAJANDAS, YEVOLI &
ALBRIGHT, P.L.
200 South Andrews Avenue, Suite 600
Fort Lauderdale, FL 33301
Telephone: (954) 566-7117
Facsimile: (954) 566-7115

David P. Steiner (*pro hac vice*)
dpsartnetlaw@gmail.com
DAVID STEINER & ASSOCIATES, PLC
1875 Century Park East, Suite 2230
Los Angeles, CA 90067
Telephone: (310) 557-8422
Facsimile: (310) 556-0336

Attorneys for Plaintiff

### Certificate of Service

     I hereby certify that on April 23, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Paul D. Turner*
Counsel of Record

17

**PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, P.L.**
200 South Andrews Avenue, Suite 600, Fort Lauderdale, Florida 33301 • (954) 566-7117
1000 Brickell Avenue, Suite 600, Miami, Florida 33131 • (305) 377-0086

**Service List**

Edwin E. Hitti
Attention: Kevin Lewis
1152 Younge Street, Suite 300
Toronto, Ontario M4W219 Canada
*Served via US Mail*

Ronald Hitti a/k/a Ronny Hitti
Attention: Kevin Lewis
1152 Younge Street, Suite 300
Toronto, Ontario M4W219 Canada
*Served via US Mail*

Richard T. Woulfe, Esq.
rtw@bunnellwoulfe.com
Louis Reinstein, Esq.
ljr@bunnellwoulfe.com
BUNNELL & WOULFE P.A.
One Financial Plaza, Suite 1000
100 Southeast Third Avenue
Fort Lauderdale, FL 33394
Telephone: (954) 761-8600
Facsimile: (954) 463-6643
*Attorneys for Defendant ASAP*
*Served via CM/ECF*

Stephen B. Gillman, Esq.
sgillman@shutts.com
SHUTTS & BOWEN LLP
1500 Miami Center
201 S. Biscayne Boulevard
Miami, FL 33131
Telephone: (305) 347-7311
Facsimile: (305) 347-7835
*Attorneys for Defendant BEA*
*Served via CM/ECF*

Paul D. Turner (113743)
pturner@pbyalaw.com
Joshua B. Spector (584142)
jspector@pbyalaw.com
PERLMAN, BAJANDAS, YEVOLI &
ALBRIGHT, P.L.
200 South Andrews Avenue, Suite 600
Fort Lauderdale, FL 33301
Telephone: (954) 566-7117
Facsimile: (954) 566-7115
*Attorneys for Plaintiff*
*Served via CM/ECF*

David P. Steiner (*pro hac vice*)
dpsartnetlaw@gmail.com
DAVID STEINER & ASSOCIATES, PLC
1875 Century Park East, Suite 2230
Los Angeles, CA 90067
Telephone: (310) 557-8422
Facsimile: (310) 556-0336
*Attorneys for Plaintiff*
*Served via CM/ECF*

**PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, P.L.**
200 South Andrews Avenue, Suite 600, Fort Lauderdale, Florida 33301 • (954) 566-7117
1000 Brickell Avenue, Suite 600, Miami, Florida 33131 • (305) 377-0086